*La nota recurrida debe ser confirmada.*

La firma profesional de LÓPEZ DE TORD & ZAYAS PIZARRO, compuesta de sus únicos socios CARLOS LÓPEZ DE TORD y VICENTE ZAYAS PIZARRO, demandantes y apelantes, *v.* HENRY G. MOLINA, demandado y apelado.

No. 4377.—*Visto:* Junio 7, 1928. *Resuelto:* Noviembre 26, 1928.

*López de Tord & Zayas Pizarro,* abogados de la apelante; *Henry G. Molina* y *M. León Parra,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

En este caso la apelación ha sido presentada a nombre de la demandante, que es la firma profesional de López de Tord y Zayas Pizarro. Esta firma ha sostenido ante la Corte de Distrito de Ponce un litigio por persecución maliciosa y por libelo contra Henry G. Molina quien formuló excepciones previas a la demanda; y la corte, al resolver las excepciones, dictó sentencia decidiendo el caso en contra de la demandante. Y contra esa resolución se interpuso el recurso.

En la resolución apelada se sintetizan los puntos de hecho que en la demanda se presentan. Es de una gran ayuda tal resolución, porque se trata de una demanda que tiene veinte y seis páginas, y se haría indispensable que la redujéramos a términos concretos y precisos: trabajo que con gran acierto y lucidez ha realizado el juez de la corte sentenciadora. Dice la resolución como sigue:

"Se trata de un caso de daños y perjuicios por persecución maliciosa y por libelo. La demanda consta de 26 páginas, y en ella se detallan los hechos, que, a juicio de los demandantes, constituyen la base para las dos causas de acción, la primera por persecución maliciosa y la segunda por libelo. Son tan extensas las alegaciones contenidas en la demanda, donde se copian distintos documentos, que nos vemos en la necesidad de sintetizarlos, copiando aquellos que sean indispensables, así: que los demandantes son abogados y tienen constituida una sociedad profesional bajo el nombre de López de Tord & Zayas Pizarro, y ejercen ante todos los tribunales de Puerto Rico, habiendo adquirido un buen nombre que tiene un gran valor en los negocios profesionales de la firma demandante; que el trabajo de cada socio es en beneficio de la sociedad, y que los asuntos que llevan ante la Corte Federal son llevados exclusivamente por el socio Zayas Pizarro, y que éste, en el caso de quiebra de The Porto Rico Drug, intervino en representación de ciertos acreedores ante el Referee de quiebra, F. E. Adams, y se opuso a que se concediera al demandado Henry G. Molina suma alguna por ciertos servicios que alegaba haber prestado como abogado del Receiver, y que habiendo el Referee concedido $750.00 la cuestión fué sometida al Hon. Ira K. Wells, Juez de la Corte Federal, para resolución final; que el señor Zayas Pizarro presentó un alegato oponiéndose a la compensación del señor Molina por varios fundamentos, entre otros, porque dicho señor Molina había sido abogado del

quebrado antes de la quiebra y abogado de varios acreedores, y que con el fin de ser nombrado abogado del receiver, había radicado un affidavit haciendo constar que no había sido abogado del quebrado ni de sus acreedores y no obstante esto, incluyó una partida de $1,000 por servicios prestados al quebrado y acreedores, siendo ésta una de las razones por las que el referee rechazó parte de su reclamación; y asimismo dijo en su alegato Zayas Pizarro que no obstante haberse adjudicado en quiebra la Porto Rico Drug Co., el señor Molina, siendo abogado del síndico, permitió que la mayor parte del activo del quebrado fuera subastado por un notario en ejecución de una prenda, sin la intervención de la Corte de Quiebra, y sin que Molina solicitara la suspensión de la venta; y alegan los demandantes que una de las cuestiones a resolver por el juez Wells era si Molina, cuando fué nombrado abogado del receiver, en realidad estaba interesado en dicho nombramiento; que el demandado Molina entonces presentó una moción solicitando la eliminación del alegato mencionado, cuya moción en su hecho 8 decía así:

" '8. That said brief also contain numerous statements which are absolutely false, as for instance, amongst others, on page 4 thereof:

" 'After having knowledge of the above facts, it is proper to say also that Mr. Henry G. Molina was quite interested in becoming the attorney for the receiver and also the attorney for the trustee (said allegation is absolutely false: the petitioner was never interested nor did anything at any time, to be appointed attorney for receiver, on the contrary, petitioner was reluctant to intervening in this case and only did so at the urgent request of creditors).

" ' . . . and it is an admitted fact that the said securities and property were sold and sacrified after Mr. Molina was appointed attorney for the said trustee, and the sale was not stayed, because the attorney for the said trustee, Mr. Henry G. Molina, did not apply to the bankruptcy court for the stay of said sale, notwithstanding the fact that the trustee notified him of the convenience of said stay, and notwithstanding the fact that the receiver and his attorney were present at the said private sale.

" 'Each and everyone of said statements are false and needless to say, not in accordance with the record in this proceeding. No property of the bankrupt was sacrified. There was no such private sale, but a public sale before a notary public, after due advertisement. The trustee (receiver) did not request petitioner to stay said sale, nor indicated any reason to petitioner why said sale should be stayed.'

"Que entonces el señor Zayas Pizarro contestó dicha moción y en cuanto al hecho 8, dijo lo siguiente:

" 'We specifically deny allegation 8th of the Motion to Strike, and we specially affirm that all statements of our brief are entirely true. It is true that Mr. Molina was interested in becoming the attorney for the receiver, because he stated to Mr. López de Tord, member of the firm López de Tord & Zayas Pizarro, when he landed from New York, shortly after the bankruptcy, and at the office of attorney from San Juan, Mr. Damián Monserrat, that he was interested in being the attorney for the receiver, and that he was willing to have the bankruptcy proceedings dismissed if the receiver appointed by the Insular Court, in the suit brought by the preferred stockholders against the Porto Rico Drug Co. before the District Court of San Juan, would appoint him his attorney. The same statement had been made personally by Mr. Molina to attorney Vicente Zayas Pizarro in front of restaurant La Mallorquina, and in his own office, the same day in which the U. S. Court rendered decision on behalf of the Insular Receiver, in the action brought by the American Colonial Bank before the U. S. Court; and later on after Mr. Molina was attorney for the receiver, and at the first meeting of creditors which started before the bankruptcy court, and at the office of the said Referee Mr. Molina was asked by Mr. Zayas whether he was interested in becoming the attorney for the trustee, inasmuch as Mr. Zayas was going to oppose such appointment and Mr. Molina answered more or less in the following way: Of course, I am interested, and I will be appointed attorney for the trustee, because at this time such appointment for me is a personal matter, *una cuestión de amor propio*. I want to know if Mr. Molina dares now to say that the above facts are not true and if the above facts do not prove beyond all reasonable doubt that he was in fact interested in both jobs.'

Continúan entonces alegando los demandantes que el demandado Molina, sin pedir explicación alguna a los demandantes y actuando maliciosamente y con el objeto de perjudicar a la firma demandante en su reputación profesional presentó en la Corte Federal una petición de disbarment, contra los demandantes, basada en los hechos anteriormente expuestos y que sería prolijo copiar de nuevo y cuya petición continuaba diciendo lo siguiente:

" '4.—That although the said answer was signed and apparently prepared solely by Vicente Zayas Pizarro, he was not present when the alleged conversation took place and hence the said statement

could only have been made by him because it was so represented to him by his partner, Carlos López de Tord. 5.—That the said statement is false and was known to be false by Carlos López de Tord and was willfully reproduced and made to this court by said Zayas Pizarro without investigating the facts with reference thereto other than to take the word of his said partner López de Tord; and said statement was wilfully and maliciously made by the said Zayas Pizarro, as a member of said partnership and as attorney for their client aforesaid, in order to prejudice the deponent in the eyes of the Honorable Judge of this Court. 6.—That on or about Monday, October 18, 1926, Damián Monserrat Sr. telephoned deponent saying López de Tord was at his office and wanted to discuse the said Porto Rico Drug bankruptcy matter, whereupon deponent went to the office of said Monserrat. That all of the proceedings that have taken place in connection with said bankruptcy and the receivership proceedings immediately prior thereto, were explained to said López de Tord, who thereupon stated substantially as follows: We all know what a receivership means in the Federal Court, such receiverships are very expensive. We know our own courts and can run a receivership thereon much cheaper. I think it would be better to withdraw the bankruptcy proceedings and turn the business of the Drug Company over to the receiver of the Insular Court. If you (referring to deponent and Monserrat, Sr.) will withdraw the bankruptcy proceedings, I am quite willing that Molina should be attorney for receiver, as I have great confidence in his ability, integrity etc., etc. Whereupon deponent replied to said López de Tord that such procedure was impossible, as the adjudication had been already entered and notices sent out to all creditors and that deponent believed the unanimous consent of said creditors would be necessary to withdraw the bankruptcy proceedings, and deponent further said that such proceedings had been instituted precisely at the request of the majority of the creditors of the bankrupt and that in his opinion it would be impossible to get the consent of any substantial number thereof, not to mention unanimous consent. Said López de Tord doubted deponent's opinion to said effect and requested the deponent to study the matter; the conference ended and deponent dismissed the subject from his mind, never bothering to study the question and not hearing any further from said López de Tord or his partner Zayas Pizarro with reference to any other matter concerning said bankruptcy from that date. 7.—And deponent further shows that the said false and improper practice

of said partnership, or at any rate of its partner Zayas Pizarro, who represents said partnership in proceedings before this court, is not exceptional with said firm, but their usual method of practice. That in a previous instance, to wit, in the matter of the bankruptcy of Manuel Aponte, and in connection with the alleged preference of the Santa Isabel Sugar Co. who was represented by deponent the said Santa Isabel Sugar Co. or its agents, were wrongfully and improperly bulldozed and threatened by the said Zayas Pizarro, as attorney for the trustee, in said case, behind deponent's back and without notification of deponent as to the communications which were being made by said Zayas Pizarro, and the representatives of said Santa Isabel Sugar Co. WHEREFORE deponent respectfully submits to the Honorable Judge of this Court, that the said conduct of the partnership López de Tord & Zayas Pizarro in making said false and malicious statement to the court, is improper and should not be tolerated by the court, and that it constituted a contempt of court, in consequence whereof the said Carlos López de Tord and the said Vicente Zayas Pizarro should be disbarred temporarily or fined or otherwise disciplined by this court in order to punish them for said wrongful conduct and to serve as an example hereafter. Sigd. Henry G. Molina. Subscribed and sworn to before me this 28th day of January 1927. Lulu G. Donohue, Clerk U. S. Dist. Court for P. R. By Sgd. Mary Aguayo, Chief Deputy. Attest a true copy, Lulu G. Donohue, Clerk.'

"Que no obstante haber recibido el demandado Molina una explicación del demandante López de Tord, dicho demandado insistió en llevar adelante el caso; que el juez Wells expidió una orden el 31 de enero de 1927, que dice así:

" 'IN THE DISTRICT COURT OF THE UNITED STATES FOR PORTO RICO. In the matter of Carlos López de Tord and Vicente Zayas Pizarro, Disbarment. 1830. ORDER TO SHOW CAUSE. Whereas, charges have been filed under oath by Henry G. Molina, a member in good standing of this Bar, against Carlos López de Tord and Vicente Zayas Pizarro, law partners practicing law under the firm name of López de Tord & Zayas Pizarro, alleging that the said firm, by its partner Zayas Pizarro, has made false and malicious •statements with reference to the conduct of Henry G. Molina as attorneys for the receiver who was appointed by the Referee in bankruptcy in the case of the Porto Rico Drug Co. bankruptcy No. 697, now, therefore, upon reading and filing the said charges, it is hereby ORDERED, that the said Carlos López de Tord

and Vicente Zayas Pizarro, both of whom are members of this bar, should show cause before this court on the 4th day of February 1927 at 2 P. M. as to the truth of said charge or charges, and if the same be true, why they or either of them should not be punished or disciplined by this court, and it is further ordered, that a certified copy of this order of the charges be sent by registered mail to said López de Tord & Zayas Pizarro forthwith. Done and ordered at San Juan, P. R. this 31st day of January 1927, Ira K. Wells, District Judge. Attest: A true copy, Lulu G. Donohue, Clerk.'

"Que los demandantes el día de la vista, comparecieron y radicaron su contestación, la cual se copia en la demanda y cubre diez páginas de la misma; entonces alegan los demandantes que empezada la vista del caso y antes de terminar la misma, la corte desestimó la petición del señor Molina, por carecer de causa para un disbarment, o por desacato a la corte; que el demandado Molina sabía que no tenía causa de acción contra los demandantes y que su actitud se debió a la idea de intimidar a los demandantes ante la Corte de Quiebras y de perjudicar y afectar a los demandantes; que dicha persecución por parte del demandado contra los demandantes, carecía de fundamento y causa, especialmente los alegados en el hecho 7 de la petición, y constituyó una persecución maliciosa con el fin de desprestigiar a los demandantes, y que como consecuencia, los demandantes han sufrido moralmente y su reputación profesional ha sido afectada en la isla y especialmente en Ponce, ya que dichos procedimientos han sido conocidos por el público en general por mediación de la prensa; que los demandantes han sufrido daños y perjuicios en la suma de $15,000.00 siendo responsable el demandado Molina.

"Como segunda causa de acción por libelo alegan los demandantes que el contenido del hecho 7 de la petición de Disbarment presentada por el demandado Molina es falso constándole así al demandado, y no obstante esto, lo juró como verdadero con la intención maliciosa de afectar el buen nombre y reputación de los demandantes; que dichas manifestaciones eran impertinentes a la cuestión suscitada ante la Corte Federal, y el demandado Molina lo hizo con el propósito de perjudicar a los demandantes, cuyas manifestaciones fueron no solamente conocidas por el tribunal, sino por infinidad de abogados que estaban presentes en la vista del caso y por gran parte del público de Puerto Rico, que se enteró por la prensa, y que los demandantes creen que fué publicado por el demandado maliciosa y torticeramente, con el fin de perjudicar, mermar, herir y afectar

a los demandantes en su reputación como abogados, habiendo sufrido daños y perjuicios en la suma de $15,000.00. Se solicita, por lo tanto, sentencia por $30,000.00, más las costas.''

En la misma resolución, página 35, récord, la corte de distrito ha dicho:

''Antes de proceder con esta resolución, la corte desea hacer constar lo siguiente: El demandado en su alegato original planteó varias cuestiones legales de importancia algunas no resueltas aún definitivamente por nuestra jurisprudencia, muy interesantes y argumentadas con gran acopio de texto y jurisprudencia, en una forma discreta y sin personalismos. No obstante esto, el primer alegato de los demandantes, firmado por el señor Zayas Pizarro, al contestar al demandado, contenía alusiones de índole personal, llevando la discusión a un terreno completamente extemporáneo, lo que dió lugar a que el demandado en su alegato de réplica contestara dichas alusiones, y los demandantes a su vez, insistieran en forma más hostil aún en el suyo. La Corte no puede menos que censurar estos hechos, pues los alegatos que a ella se presentan son para ilustrar al juez en las cuestiones planteadas y facilitar su mejor y más pronta resolución y no un motivo para desahogar enconos personales. Nos limitamos a citar lo que en un caso análogo, ha dicho nuestro Tribunal Supremo por su Juez Presidente, señor del Toro, en el caso de *Benítez*, vs. *Borinquen Trading Cor*. 33 D.P.R. 495, en la página 499:

'' 'Ha sido éste un pleito y un recurso tramitados con mucho encono. No sólo en el alegato del tercerista apelado, si que también en el alegato de la parte apelante se emplean argumentos y palabras de índole personal completamente innecesarios, en forma más abierta y violenta en el alegato del apelado de modo más velado, pero no por ello menos fuerte, en el alegato de la apelante.

'' 'Atendidas todas las circunstancias concurrentes, creemos que no procede decretar las eliminaciones solicitadas, limitándonos a censurar cualquier desviación de las buenas prácticas que consisten en circunscribirse a los hechos y a la ley, sin penetrar innecesaria y apasionadamente en el terreno personal.' ''

Convenimos con la sabia y discreta censura hecha por la corte de distrito. Es deplorable que esto suceda precisamente entre abogados, que parece debían tener más facilidades para reprimir los arranques pasionales, guardando mayor ecuanimidad, y con ella un más sincero respeto a la

administración de justicia. El campo de la contienda judicial está, o debe estar, cerrado a la admisión de cualquier violencia, y de él se halla proscrito todo lo que tienda a personalismo y dureza de expresión: no es campo de batalla, en el que se pueda usar cualquier clase de armas, sino justa o torneo, en el que para defender, y para hacer triunfar la razón de nuestras contenciones, bastan la espada de la razón, y la invencible fuerza de la ley. Aparte de lo que ha dicho este tribunal en la decisión antes citada, recordemos que hay una regla, la 23 de las de las cortes de distrito, en la que se dispone lo que sigue:

"Regla 23.—Los abogados serán requeridos para que concreten sus argumentaciones a la cuestión que se debate. Las críticas personales entre los abogados deben evitarse y en caso de que se hicieren, los culpables pueden ser condenados por desacato."

Las violencias de lenguaje, en un procedimiento judicial, no sólo hieren a aquel a quien van dirigidas; hieren al tribunal ante que se procede, porque violan la noble serenidad que es indispensable a la más alta función que puede encomendarse a un hombre, la custodia y cumplimiento de la ley, y la administración de la justicia.

En las primeras páginas del alegato de la parte apelante, se trata de la censura formulada por el juez de distrito. Al empezar a leer lo escrito por la apelante tuvimos la esperanza de que se ofrecía una franca explicación de ciertas actitudes; pero esa esperanza quedó desvanecida, ya que, en la realidad, se dedican las primeras páginas del alegato, a presentar a la otra parte como la única responsable de lo sucedido, si bien manifiestan los apelantes que deploran por respeto al tribunal, que tal ocurriera.

Se señalan diez y seis errores, que se suponen cometidos por la corte de distrito.

Precisa clasificar y agrupar estos señalamientos, y estudiar los que deben ser objeto de estudio.

■■ Insistimos en la doctrina consignada por este tri-

bunal con respecto a que no pueden ser base para apelación las frases y conceptos de la "Opinión" del tribunal inferior. La doctrina seguida, la interpretación de la ley, o la aplicación que de ella se hizo al caso concreto, pueden ser fundamento para el recurso; pero no el comentario del juez, o las palabras que él usó.

El recurso de apelación se da contra las sentencias. Y así se ha declarado por este tribunal, lo que sigue:

"La sentencia contra la cual se ha interpuesto apelación es lo que tenemos que considerar, y, si fué errónea, corregirla; y no podemos regirnos enteramente por los razonamientos a que ha llegado el juez sentenciador con respecto a la ley y a los hechos que fueron sometidos a su consideración.—Pellicier vs. Fernández 19 D.P.R. 117. . . . . los recursos de apelación se dan contra la sentencia, y no contra sus fundamentos.—Enrich vs. Forteza, 18 D.P.R. 459. . . . . el recurso de apelación no se da contra los fundamentos de las sentencias, sino contra éstas, que son las que deciden los derechos de las partes en un pleito o procedimiento. Alcaide vs. Morales et al., 26 D.P.R. 238."

Se ha declarado asimismo por este tribunal, que aunque los fundamentos o razones en que un juez base su fallo no estén ajustados a derecho, ello no sería motivo de revocación, si hubiera otros hechos que justificaran tal fallo. (Díaz Caneja v. Administración, 11 D.P.R. 203.)

No quiere esto significar que las partes se hallen impedidas de discutir los fundamentos jurídicos de una sentencia, o este tribunal lo esté, en cuanto al examen y crítica científica de los mismos. Pero el razonamiento del juez sentenciador en una opinión o decisión, no es fundamento del recurso, ya que, aún con fundamentos de discutible fuerza, puede haberse llegado a una recta solución del problema ante la corte. Si se permitiera entablar la discusión sobre las frases del juez en la decisión, podría fácilmente llegarse a presentar un enorme número de señalamientos de error, dando forma y números distintos, a lo que en realidad puede caber en un solo señalamiento; y es indudable que en las apelaciones no es

lo importante el número de señalamiento de error, sino su calidad.

En este caso, entendemos que las cuestiones importantes, y que tienen peso y fuerza para determinar y resolver el litigio, son las que pasamos a exponer.

A.—Si en Puerto Rico existe, o no, la acción por persecución maliciosa, como consecuencia de un pleito civil.

B.—Si una petición de castigo disciplinario, aún de *disbarment,* dirigida a un tribunal de justicia, y presentada ante el mismo, tiene el carácter de privilegiada, o puede ser una publicación maliciosa, y constituir libelo.

Estudiemos la primera cuestión.

Se ha discutido mucho en este caso la decisión de este mismo tribunal en *Parés* v. *Ruiz,* 19 D.P.R. 342. Y de ella se ha tomado especialmente algún párrafo, y en él ciertas palabras, de las que se extraen consecuencias muy importantes. Nos referimos a las siguientes:

"La acción denominada persecución maliciosa, surge ex-delictu, y se ejercita para la reclamación de daños y perjuicios a la persona, propiedad o reputación, que han ocurrido como consecuencia inmediata de una acción civil o criminal que ha sido establecida anteriormente, que se inició y siguió con malicia y sin causa probable, y terminó sin resultado alguno."

En esas palabras "acción civil o criminal," se ha hecho una gran fuerza en la discusión. Bien es verdad que no se hace ninguna en estas otras: "consecuencia *inmediata,"* que tienen suma importancia.

Cualquiera que sea el sentido que quiera darse a las palabras, han debido tenerse en cuenta otros elementos de significación.

Así, en primer término, es de esencial importancia recordar que en ese caso se trataba de una denuncia en materia penal, de un caso en el que se siguió un procedimiento en la vía criminal, y en el que el denunciado fué arrestado, y luego fué el proceso sobreseído por no haber causa suficiente para acusar a determinada persona.

A más de esto, en la misma opinión que se comenta, y al tratar la cuestión fundamentalmente, se dice por el tribunal:

"En las acciones por persecución maliciosa, cuatro son los elementos esenciales que deben alegarse y probarse, a saber:

"1. Que el demandante ha sido denunciado por el demandado.

"2. Que la causa terminó de modo favorable para el demandante.

"3. Que fué seguida maliciosamente y sin que existiera causa probable.

"4. Que el demandante sufrió daños y perjuicios como consecuencia de ello. Field on Damages, artículo 686, pág. 544; 26 Cyc. 8; Breneman vs. West, 21 Tex. Civ. App., 21, 50 S. W. Rep,. 471; Collins vs. Campbell, 18 R. I. 738, 31 Atl. Rep. 832."

Como se ve, se trata, no de procedimientos civiles, sino de procesos de orden penal promovidos por denuncia.

El caso de *Herbener* v. *Crossam,* que se cita en la decisión *Parés* v. *Ruiz,* fué uno en el que hubo una denuncia en la vía penal, por la que se acusó a un hombre de haber cometido un delito, y aquel hombre fué arrestado. (Véase Herbener v. Crossam, 55 Atl. Rep., 223). Y en el caso *Stone* v. *Crocker,* 24 Pickering, Mass., 81, ocurría lo mismo, esto es, hubo una denuncia en la vía penal.

La cita de esos dos casos, en los que concurría aquella circunstancia, demuestra que no se trató de dar a las palabras "acción civil" la fuerza, o el significado que ahora se pretende tengan.

En el caso *Torres* v. *Ramírez,* 22 D.P.R. 450, encontramos que también hubo una denuncia de carácter penal. En esta decisión se citan algunos casos que conviene tener presentes, y de los que se hará mención. La doctrina jurídica acerca de los elementos esenciales a una acción por persecución maliciosa, de los que se hizo mención en el caso *Parés* v. *Ruiz,* *supra,* se ratifica y confirma en esta decisión; y en el caso que se decide hubo una denuncia por falsa representación e impostura, y un archivo del proceso por no haber causa para considerar culpable al acusado.

En el caso *Paganacci* v. *Lebrón,* 24 D.P.R. 796, también

medió una denuncia criminal, como ocurrió en el caso *Fuentes* v. *Martínez*, 25 D.P.R. 84, y en el caso *Mariani* v. *Porto Rican Express*, 25 D.P.R. 618, y en *Quiñones* v. *Rosado*, 28 D.P.R. 491.

Se ha citado la decisión en *Zalduondo* v. *Sánchez*, 15 D. P.R.231. En ella se hicieron declaraciones de doctrina jurídica, que marcan de una manera final la procedencia de las acciones ex-delictu. En la antigua legislación la responsabilidad criminal por razón de delito o falta, llevaba consigo la responsabilidad civil para reparación de los perjuicios ocasionados por el acto delictivo; consecuencia ésta, de la doctrina de que la pena no sólo tenía la finalidad de la satisfacción del orden social perturbado por el delito, sino que llevaba, como secuela jurídica, la de la reparación del daño causado. El reconocimiento de tal acción y de tales responsabilidades, aparecía de los artículos del Código Penal, Ley de Enjuiciamiento Civil y Código Civil Español, que rigieron, en Puerto Rico, y cuyos artículos se citan en la decisión de que tratamos. Los artículos 1089, 1092 y 1902 del Código Civil de España, han sido reproducidos en nuestro Código Civil, según se dice en la referida decisión *Zalduondo* v. *Sánchez;* si bien el artículo 1902 de aquel Código se refiere exclusivamente a acciones que nacen de actos u omisiones en que intervino culpa o negligencia.

La decisión de que hacemos mérito, se refiere a un caso en que hubo, como determinante del daño, la comisión de un delito, de que fué víctima Zalduondo. La acción civil en este caso tendía a la reparación de los daños sufridos por Zalduondo como inmediata consecuencia del delito, de la agresión, y de los resultados de ella en la persona del agredido. Y en el caso se decidió por este tribunal que tal acción se halla consagrada por el antiguo y el moderno Derecho en Puerto Rico.

No se refiere, pues, la decisión de que tratamos, a un caso de persecución maliciosa. Establece principios y doctrina

con referencia a la indemnización de daños y perjuicios consecuencia de un acto penable o criminal, y los señala de un modo general y amplio, sin hacer relación al caso específico de persecución maliciosa.

¿Hubo en la presentación por el demandado Molina de su moción para *disbarment* o para otra corrección disciplinaria, un delito? ¿Ejercitaba él una acción civil o una acción de carácter penal?

Nos parece indudable que una acción de *disbarment,* una petición en ese sentido, no tiene un carácter penal, o criminal. La jurisprudencia, por regla general, da a los procedimientos sobre *disbarment,* privación temporal, o absoluta, del ejercicio de la profesión de abogado, el carácter de civiles, como encaminados, no a la imposición de una pena, sino a la protección de los tribunales y de la profesión.

"Como el procedimiento para inhabilitar (disbar) a un abogado no es un procedimiento criminal, no es necesario que se siga en nombre del Estado." In re McDonald, 157 Ky. 92, 162 S.W. 566; In re Bowman, 7 Mo. A. 569; In re Crum, 7 M.D. 316, 75 N. W. 257.

Se ha dicho asimismo que los procedimientos de *disbarment* son de carácter sumario, y nacidos del poder inherente de los tribunales sobre sus oficiales, y por ello se les tiene como de naturaleza civil, y no penal. Ex Parte Wall, 107 U. S. 265. Otto XVII.

En la ley estableciendo la Comisión de Reputación, de 11 de marzo de 1909, secciones 164 a 180 inclusive de la Compilación de Estatutos de Puerto Rico, de 1911, se da al procedimiento de *disbarment* un carácter más civil y disciplinario, que penal. Aunque en la sección 13 de esa ley, o 176 de la Compilación, se impone al Attorney General y sus representantes o delegados el deber de sostener la acusación, la Sección 12 de la misma ley encomienda al Tribunal Supremo la función de recibir la queja contra el abogado y la de destituirlo o suspenderle. Si el procedimiento fuera de orden penal, quizá·estará encomendada su tramitación al

fiscal del distrito, y su resolución a las cortes que ordinariamente conocen de los casos criminales.

Declaramos que el procedimiento para *disbarment,* o para otra corrección disciplinaria, no es de orden penal, y la petición que a ese fin se presenta a una corte, no tiene el carácter de una denuncia, ni las consecuencias de la misma, en lo criminal, ni en lo civil.

En cuanto a que de un procedimiento civil nazca una acción por persecución maliciosa, tenemos que distinguir.

Empecemos por establecer que no hay precepto alguno del Código Civil o del de Enjuiciamiento o Procedimiento Civil, que dé claramente origen o margen a tal acción. Y es sumamente arriesgado declarar la existencia de acciones por analogía. Pero es cierto que en el Código de Enjuiciamiento Civil se ha señalado un procedimiento para el arresto del deudor demandado, y que cabe que una acción para indemnización de daños y perjuicios por arresto indebido se ejercite con éxito. Previsor el código ha impuesto al que pide tal arresto la obligación de prestar una fianza, que responde de los perjuicios que el arresto ocasione. Entonces, a nuestro entender la acción por perjuicios, a más de ser razonable, es absolutamente legal. Véanse artículos 144, 146 y 147, código citado.

Quédanos el caso de que se haya practicado, injusta o ilegalmente, un embargo de bienes, y se haya ocasionado perjuicio. Este perjuicio, generalmente, viene cubierto por la fianza del que pidió el embargo; pero hay casos en que no es necesaria la fianza por razón del documento en que aparece la obligación; y si se hiciera maliciosa e ilegalmente el embargo, nacería de los perjuicios que él ocasionara, una acción civil.

No nos hallamos en ninguno de esos dos casos.

No se trata, pues, de una denuncia criminal, maliciosa y falsa, y que pudiera ocasionar las consecuencias de responsabilidad penal, de un lado, y civil de otro. Y, en cuanto a

la petición, en la vía civil, o en la disciplinaria, para un *disbarment*, no vemos tampoco cómo, de la legislación vigente en Puerto Rico, pueda nacer la acción de daños y perjuicios por persecución maliciosa.

Los errores señalados en lo que atañe a esta causa de acción, no existen.

■ Con referencia a la acción por libelo, confirmamos la opinión del juez sentenciador. En un sólido y profundo estudio de la materia, el juez sentenciador llega a la conclusión de que de las alegaciones de la demanda no se puede afirmar que el demandado Molina actuara de mala fe, y sin causa probable, y que siendo la petición hecha a la Corte Federal una comunicación privilegiada, no puede ser considerada como libelo. El párrafo de la opinión en que se trata este punto dice así:

"De acuerdo con la ley autorizando estas acciones por libelo, de 1902, se provee en parte en la sección 4, que no se tendrá por maliciosa, ni como tal se considerará, la publicación que se hace en un procedimiento legislativo, judicial u otro procedimiento cualquiera autorizado por la ley, y que no se presumirá que es maliciosa la publicación que se hace a un funcionario oficial, apoyada en causa probable, con la intención de servir al procomún, o de conseguir remedio a un perjuicio hecho a un particular. Siendo esto así, no hay duda alguna de que la petición de disbarment presentada por el demandado Molina en la Corte Federal, era una comunicación dirigida a un tribunal de justicia y como tal, era una comunicación privilegiada y que dicho privilegio debe ser reconocido siempre que las imputaciones que contenía la petición fueron hechas de buena fe, y habiendo la Corte resuelto que las alegaciones de la demanda en conjunto no demuestran que el demandado actuara maliciosamente y sin causa probable, no es aplicable la conclusión a que llegó la Corte Suprema en el caso de Franco vs. Martínez. Además, en dicho caso se resolvió que tampoco existía el privilegio porque el demandado dió publicación innecesaria al contenido de su querella, y éste fué el fundamento también que tuvo dicho tribunal en el caso de Benet vs. Hernández, *supra*, mientras que en el caso de autos, no existe alegación alguna en la segunda causa de acción de que el demandado Molina diera publicación alguna a la petición que pre-

sentó ante la Corte Federal, pues, como hemos visto en los pronunciamientos del caso de Franco, el hecho de jurar y radicar una querella de esta naturaleza ante un tribunal no constituye la publicación de las palabras libelosas que pueda contener. La mera alegación contenida en esta causa de acción de que infinidad de abogados que estaban presentes en la vista del caso y gran parte del público de Puerto Rico se enteraron por mediación de la prensa de dichos procedimientos es insuficiente, asimismo, para destruir el carácter de privilegiado del procedimiento.''

En consecuencia de lo expuesto, no encontramos que debamos declarar la existencia de ninguno de los errores señalados.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Hutchison está conforme con la sentencia.